UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| STANLEY FOSSETT, | Case No. 06-CV-1820 |
| Plaintiff, |  |
| vs. | Judge Ann Aldrich |
| FORD MOTOR COMPANY, et al., |  |
| Defendants. | **MEMORANDUM AND ORDER** |

Before the court is defendant Ford Motor Company's ("Ford") motion for summary judgment on plaintiff Stanley Fossett's ("Fossett") claim for race discrimination in violation of Ohio Revised Code § 4112.99[1] (Doc. No. 36). For the following reasons, Ford's motion for summary judgment is denied.

**I. Background**

Fossett is currently employed as a machine operator at Ford's Cleveland Casting Plant and is represented by the United Auto Workers ("UAW") under the terms of a collective bargaining agreement between the UAW and Ford. Fossett filed an eight-count complaint in state court that was removed to this court in July 2006 by Ford (Doc. No. 1). Ford's motion to dismiss [Docket No. 11], filed in September of 2006, was granted in part and denied in part, with Fossett's race discrimination claim in violation of Ohio law surviving. The court found that dismissal of Fossett's

---

[1] Discrimination on the basis of race is an unlawful discriminatory practice in violation of O.R.C. § 4112.02. In his complaint [Docket No. 1], Fossett cites unlawful discriminatory practice in violation of O.R.C. § 4112.99. O.R.C. § 4112.99 is the section of the code that provides civil relief for an O.R.C. § 4112.02 violation.

race discrimination claim without discovery was not proper because Fossett had sufficiently plead each of the four elements of a race discrimination claim thereby establishing a prima facie case of discrimination. In his complaint, Fossett alleged that Ford continually subjected him to warrantless reprimands and discipline and that Ford discriminated against him because of his race (Complaint ¶¶ 4, 5, 44). Fossett further alleged that Ford engaged in a pattern of resolving similar conduct more favorably for white employees (Complaint ¶ 11).

## II. Discussion

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, Ford bears the burden of demonstrating the absence of genuine issues of material fact on Fossett's claims. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Hendrix v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). In determining whether a genuine issue of material fact exists, this court must view the evidence in a light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004). Determination of whether an issue is genuine requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided" that [the moving party] must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (U.S. 1986). In addition, a fact is material only if its resolution will affect the outcome of the lawsuit. *Id*.

### Discrimination Based of Race in Violation of Ohio Revised Code § 4112.

Fossett alleges race discrimination in violation of Ohio Revised Code § 4112. The Ohio Supreme Court has ruled that federal case law interpreting and applying Title VII is generally applicable to cases involving Ohio Revised Code § 4112. *Genaro v. Cent. Transp.*, 84 Ohio St. 3d 293 (Ohio 1999); *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St. 3d 89 (Ohio 1994); *Plumbers & Steamfitters Joint Apprenticeship Comm. V. Ohio Civil Rights Comm'n.*, 66 Ohio St. 2d 192 (1981).

To prevail on a race discrimination claim brought under Title VII, or Ohio Revised Code § 4112, Fossett must first establish a prima facie showing that he (1) is a member of a protected class; (2) is qualified for the job; (3) suffered an adverse employment action; and (4) was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of the protected class. See *Plumbers*, 66 Ohio St.2d at 197; *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 252-53, citing *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802. If Fossett is able to establish a prima facie case, a presumption of discrimination is created and the burden shifts to Ford to articulate some legitimate, nondiscriminatory reason for the challenged actions. *Id*. If Ford can articulate such a reason, then Fossett must prove that the proffered race neutral explanation was not the true reason, but a pretext for discrimination. *Burdine*, 450 U.S. at 253. Pretext is established by showing that: (1) the stated reason had no basis in fact; (2) the stated reasons were not the true actual reasons; or (3) that the stated reasons were insufficient to justify the Ford's actions. *Hughes v. GMC*, 212 Fed. Appx. 497,

498 (6th Cir. 2007) citing *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1161 (6th Cir. 1991). In addition, for the purpose of establishing a prima facie case of discrimination, the Sixth Circuit has determined that to be deemed "similarly situated," the individual with whom an employee seeks to draw a comparison must be similar in all relevant aspects. *Hughes*, 212 Fed. Appx. At 498.

Ford argues that Fossett's cause of action for race discrimination fails each analytical level of Title VII/*McDonnell Douglass* because he is unable to satisfy his prima facie case, that Ford has articulated a legitimate, non discriminatory reason for its action, and that Fossett cannot present sufficient evidence of pretext to rebut Ford's presumption.

First, Ford argues that Fossett cannot satisfy the fourth element of the prima facie case by showing that non-protected employees were treated more favorably. Ford does not contest the other three elements of Fossett's prima facie case. To compare his treatment to that of non-protected employees, Fossett must show that the "comparables" are similarly situated in all respects. *Mitchell*, 964 F.2d at 583 (quoting *Scotts v. Memphis Fire Department*, 858 F.2d 289, 296-98 (6th Cir. 1988)). Thus, to be deemed "similarly situated," the individual with whom Fossett seeks to compare his treatment must have dealt with the same supervisor, been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or Ford's treatment of them for it. *Id.* Fossett, an African American, identifies Scott Groth ("Groth"), a Caucasian as a similarly situated co-worker. (Fossett Dep. at 98). The record is clear that both Fossett and Groth worked on the same shift, for the same supervisor and allegedly engaged in the same conduct of "walking off the job without permission" (*See* Affidavit of Wayne Calanni; *See also* Exhibit 2 to Affidavit of Wayne Calanni).

At issue is whether Ford treated Groth, the Caucasian employee, more favorably than Fossett

when Ford disciplined the two employees for the same conduct. While Fossett alleges that Groth "was constantly walking off the job and nothing was being said," Ford maintains that it did discipline Groth for walking off the job.[2] (Fossett Dep. at 98). Yet, there is a disparity in how the two employees were disciplined. Groth, for his first infraction, was given coaching and counseling. Fossett, however, received a suspension of balance of the shift and one day. Ford offers no explanation for the discrepancy.

Ford states that "on August 2, 2005, [Fossett] walked off his job without permission on two separate occasions. As a result, [Fossett] was informed of Ford's progressive discipline policy and suspended for the balance of his shift plus one additional day. On April 5, 2006, [Fossett] again walked off his job without permission. For this second infraction in an 18 month period, [Fossett] was suspended for three days, with one being served on paper." (Motion for Summary Judgment pp. 3-4). Since April 5, 2006 is termed Fossett's "second infraction," it is logical that August 2, 2005, is Fossett's first infraction. It is unclear, however, why Fossett's discipline appears more harsh for his first infraction since Groth, the Caucasian employee, was given coaching and counseling for his first infraction while Fossett was disciplined with a suspension of balance of a shift and one day.

Ford notes that Fossett walked off the job without permission on two separate occasions. In reviewing Fossett's testimony surrounding the August 2, 2005 infraction, Fossett maintains "that is the date the hearing was held…that doesn't mean that both incidents happened on that day" (Fossett Dep. at 104). Fossett further testifies that receiving the discipline of balance of the shift and

---

[2] In an affidavit by Wayne Calanni, Hourly Personnel Representative for Ford Motor Company, Calanni states that on May 22, 2006, Ford disciplined Scott Groth for walking off the job without permission. The Affidavit further states that because this was Mr. Groth's first infraction for this offense within the contractual 18-month period, Mr. Groth was given coaching and counseling as his discipline.

one day was wrong, that he should have received a verbal hearing; "[Ford] went straight to giving me time off, which is wrong." (Fossett Dep. at pp. 104-105). From Ford's affidavit, it can be inferred that Ford's discipline policy for the first infraction of walking off the job without permission is "coaching and counseling." Moreover, "coaching and counseling" is consistent with what Fossett testifies that he should have received for his first infraction. (Fossett Dep. at pp. 104-105). Ford stipulates that on August 2, 2005, Fossett's first infraction,[1] Fossett was suspended for the balance of his shift plus one additional day for walking off the job without permission. This court is not inclined to infer that Fossett's discipline was more harsh because he "walked off the job on two separate occasions" given that there appears to be inconsistencies as to when the alleged incident occurred and when the discipline was received. Viewing the evidence in a light most favorable to the nonmoving party, genuine issues of material fact exists as to whether Fossett was treated less favorably than a similarly situated individual outside of his protected class.

Ford next argues that it has articulated a legitimate, non-discriminatory reason for the adverse employment action and that Fossett cannot present sufficient evidence to demonstrate pretext. Ford's legitimate non-discriminatory reason for the adverse employment action is that Fossett walked off his job on three occasions without permission, violating work rules. However, Ford's proffered race neutral explanation for Fossett's discipline is unpersuasive in light of unresolved contradictory evidence as to whether Fossett violated the work rule.

Ford has attached several affidavits and "Disciplinary Action Reports" for each of the three

---

[1] "On August 2, 2005, Plaintiff walked off his job without permission on two separate occasions. As a result, Plaintiff was informed of Ford's progressive discipline policy and suspended for the balance of his shift plus one additional day. On April 5, 2006, Plaintiff again walked off his job without permission. For this second infraction in an 18 month period, Plaintiff was suspended for three days, with one being served on paper." (Motion for Summary Judgment pp. 3-4) As April 2, 2006 is termed "second infraction", it is logical that August 2, 2005 was Fossett's first infraction

separate infractions in which Fossett allegedly violated the work rule. However, on June 15, 2006, the UAW filed a grievance on Fossett's behalf alleging that "[t]he Union protest[sic] Management for wrongfully and unjustly administering a penalty of 5 days off for allegedly being off the job without permission…the Aggrieved not only notified the proper people but the transmission was heard by another employee with a radio as well…" (John Holland's Affidavit and Exhibit 4 to John Holland's Affidavit). In addition, Fossett disputes violating the work rule because on several occasions he allegedly notified the proper people that he had to use the restroom.

Viewing the evidence in a light most favorable to the non moving party, Ford has failed to demonstrate the absence of a genuine issue of material fact as to the stated reasons for the discipline.

**III. Conclusion**

For the foregoing reasons, the court denies Ford's motion for summary judgment. The court sets a status conference to discuss future dates on Friday, May 16, 2008 at 11:00 a.m.


IT IS SO ORDERED.

                              s/Ann Aldrich
                              ANN ALDRICH
                              UNITED STATES DISTRICT JUDGE

March 10, 2008